## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

[1] OKLAHOMA STATE CONFERENCE
of the NAACP,

*Plaintiff*,

v.

[1] JOHN O'CONNOR, in his official
capacity as Oklahoma Attorney
General,

[2] DAVID PRATER, in his official
capacity as District Attorney of
Oklahoma County,

*Defendants*.

Case No. 5:21-cv-00859-C

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION WITH MEMORANDUM IN SUPPORT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION...............................................................................................1

FACTS ...........................................................................................................2

ARGUMENT ...................................................................................................5

   I.   Oklahoma NAACP Is Likely to Prevail on the Merits ...........................................6

      A.  HB 1674's Organizational-Liability and Street-Obstruction Provisions Violate Due Process and the First Amendment...................................................6

         1.  The Provisions Violate the Due Process Clause Because They Are Void for Vagueness...................................................................................6

            *a.*  *The Organizational-Liability Provision* ...................................7

            *b.*  *The Street-Obstruction Provision* ...........................................11

         2.  The Provisions Violate the First Amendment Because They Penalize a Substantial Amount of Protected Activity ...................................14

            *a.*  *The Organizational-Liability Provision* ...................................16

            *b.*  *The Street-Obstruction Provision* ...........................................18

   II.  Oklahoma NAACP Will Suffer Irreparable Harm Absent an Injunction .............21

   III.  The Balance of Equities Tips in Oklahoma NAACP's Favor and Injunctive Relief Serves the Public Interest ...........................................................23

CONCLUSION ...............................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aposhian v. Barr*,
  958 F.3d 969 (10th Cir. 2020) ........................................................................ 6

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) ................................................................. 22, 25

*Bell v. Keating*,
  697 F.3d 445 (7th Cir. 2012) ...................................................................... 12, 19

*Brown v. Cal. Dep't of Transp.*,
  321 F.3d 1217 (9th Cir. 2003) ........................................................................ 8

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ........................................................................................ 24

*Bushco v. Shurtleff*,
  729 F.3d 1294 (10th Cir. 2013) ................................................................... 7, 13

*Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*,
  236 F.3d 1174 (10th Cir. 2000) ..................................................................... 20

*Cmty. Commc'ns Co., Inc. v. City of Boulder*,
  660 F.2d 1370 (10th Cir. 1981) ..................................................................... 22

*Coates v. City of Cincinnati*,
  402 U.S. 611 (1971) .................................................................................. 12, 19

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985) ...................................................................................... 20

*Cox v. Louisiana*,
  379 U.S. 536 (1965) ...................................................................................... 24

*Dimmitt v. City of Clearwater*,
  985 F.2d 1565 (11th Cir. 1993) ....................................................................... 8

*Doe v. Harris*,
  772 F.3d 563 (9th Cir. 2014) .......................................................................... 25

*Dream Defs. v. DeSantis*,
  2021 WL 4099437 (N.D. Fla. Sept. 9, 2021) ........................................... 4, 14, 18

*DTC Energy Grp., Inc. v. Hirschfeld*,
  912 F.3d 1263 (10th Cir. 2018) ....................................................................... 5

*Elrod v. Burns*,
  427 U.S. 347 (1976) ...................................................................................... 22

*Faustin v. City, Cnty. of Denver*,
    268 F.3d 942 (10th Cir. 2001) ................................................................ 20

*Free the Nipple-Fort Collins v. City of Fort Collins*,
    916 F.3d 792 (10th Cir. 2019) ................................................ 22, 24, 25

*Frisby v. Schultz*,
    487 U.S. 474 (1988) ............................................................................... 20

*Galbreath v. City of Okla. City*,
    568 F. App'x 534 (10th Cir. 2014) ........................................................ 13

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ......................................................................... 6, 7, 14

*Heideman v. S. Salt Lake City*,
    348 F.3d 1182 (10th Cir. 2003) ............................................................. 22

*Hill v. Colorado*,
    530 U.S. 703 (2000) ............................................................................... 13

*Johnson v. United States*,
    576 U.S. 591 (2015) ............................................................................... 6, 7

*McCraw v. City of Oklahoma City*,
    973 F.3d 1057 (10th Cir. 2020) ....................................................... 20, 21

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ......................................................................... 19, 20

*Musser v. Utah*,
    333 U.S. 95 (1948) ............................................................................. 9, 18

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ............................................................................... 24

*NAACP v. Alabama ex rel. Flowers*,
    377 U.S. 288 (1964) ............................................................................... 16

*NAACP v. Button*,
    371 U.S. 415 (1963) ............................................................................... 15

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982) ......................................................................... 16, 18

*Pac. Frontier v. Pleasant Grove City*,
    414 F.3d 1221 (10th Cir. 2005) ............................................................. 24

*Planned Parenthood of Ark. & E. Okla. v. Cline*,
    910 F. Supp. 2d 1300 (W.D. Okla. 2012) ............................................. 22

*Roberts v. U.S. Jaycees*,
    468 U.S. 609 (1984) ............................................................................... 15

*Rodgers v. Stachey*,
  382 F. Supp. 3d 869 (W.D. Ark. 2019) .......................................................21

*Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression &
  Criminalization of a Generation v. City of Seattle*,
  550 F.3d 788 (9th Cir. 2008) ....................................................................14

*Smith v. Goguen*,
  415 U.S. 566 (1974) .................................................................................15

*Stahl v. City of St. Louis*,
  687 F.3d 1038 (8th Cir. 2012) ..................................................................12

*United States v. Hunter*,
  663 F.3d 1143 (2011) ...............................................................................13

*United States v. Stevens*,
  559 U.S. 460 (2010) ............................................................................15, 18

*Verlo v. Martinez*,
  820 F.3d 1113 (10th Cir. 2016) ...............................................6, 22, 24, 25

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .......................................................................................6

**Constitutional Provisions**

U.S. Const. amend. I ......................................................................................15

U.S. Const. amend. XIV..................................................................................6

**Statutes**

Okla. Stat. tit. 21, § 9...................................................................................10

Okla. Stat. tit. 21, § 10.................................................................................10

Okla. Stat. tit. 21, § 302(3)............................................................................4

Okla. Stat. tit. 21, § 375............................................................................3, 8

Okla. Stat. tit. 21, § 421(A).......................................................................9, 18

Okla. Stat. tit. 21, §§ 1311–1320.10...................................................4, 21, 25

Okla. Stat. tit. 21, § 1319.............................................................................10

Okla. Stat. tit. 21, § 1320.4..........................................................................10

Okla. Stat. tit. 21, § 1320.5..........................................................................10

Okla. Stat. tit. 21, § 1362...............................................................................3

Okla. Stat. tit. 21, § 1379.1(A)–(B)................................................................4

Okla. Stat. tit. 21, § 1754.................................................................13, 21, 25

Okla. Stat. tit. 47, § 11-503 ............................................................................... 3

Okla. Stat. tit. 47, § 11-506(a)......................................................................... 3

**Legislative Materials**

2021 Okla. Sess. Laws ch. 106................................................................... 4

2021 Okla. Sess. Laws ch. 106, § 1................................................. 5, 11, 19

2021 Okla. Sess. Laws ch. 106, § 3.................................................. 5, 7, 11

HB 1674 Floor Debate, Okla. Senate, Reg. Sess. (Apr. 14, 2021),
    https://oksenate.gov/live-chamber .................................................. 13

**Other Authorities**

Martin Luther King, Jr., *Letter from a Birmingham Jail* (April 16, 1963),
    https://perma.cc/6KCX-V4GC ....................................................... 4

Plaintiff Oklahoma State Conference of the NAACP ("Oklahoma NAACP"), respectfully moves for a preliminary injunction against Defendants John O'Connor and David Prater, prohibiting them from enforcing Oklahoma House Bill 1674, 2021 Okla. Sess. Laws ch. 106 (to be codified at Okla. Stat. tit. 21, §§ 1312, 1320.11–.12). The law is set to take effect on November 1, 2021. Oklahoma NAACP also requests that the Court hold a hearing on its Motion where oral argument may be presented. In light of the constitutional interests asserted, Oklahoma NAACP believes that oral argument will aid the Court's disposition of this Motion.

## INTRODUCTION

Oklahoma House Bill 1674 ("HB 1674") is the latest in a long history of efforts by states to stifle the ability of civil rights organizations to exercise their First Amendment freedoms. Passed in the wake of last summer's racial-justice demonstrations after the murder of George Floyd, HB 1674 poses an existential threat to Plaintiff Oklahoma NAACP. HB 1674's vague and overbroad provisions violate the First and Fourteenth Amendments on their face, and they must not be allowed to go into effect on November 1.

The law imposes enhanced liability—quite possibly to the tune of millions of dollars—on organizations deemed to be "conspirators" with individuals who commit certain enumerated riot-related crimes. But the law's terms are so vague and overbroad that they fail to put organizations on notice regarding the extent of possible liability or even what conduct might expose them to liability in the first place. Indeed, HB 1674's language could impose devastating fines on Oklahoma NAACP for "conspiring" with individuals to commit minor crimes in the ordinary course of its nonviolent demonstrations—such as

jaywalking or making loud noises—if any of those individuals also independently and unforeseeably commits one of the enumerated crimes, such as riot or unlawful assembly. This uncertainty over whether any given future demonstration might bankrupt Oklahoma NAACP threatens to put an end to the organization's proud tradition of nonviolent resistance and to suppress political speech squarely protected by the First Amendment.

In addition, HB 1674 will further chill Oklahoma NAACP's First Amendment activity by creating a vague and overbroad street-obstruction crime.  Among other things, this provision imposes criminal liability on anyone "standing" or "approaching" vehicles in the street if doing so would render passage "unreasonably inconvenient."  These vague and overbroad terms not only criminalize core First Amendment conduct like leafletting, but also trigger HB 1674's enhanced-liability provision.  Because these provisions fail to give Oklahoma NAACP fair notice of the conduct they punish and penalize a substantial amount of expressive activity, they violate the First and Fourteenth Amendments.

## FACTS

*Oklahoma NAACP's Peaceful Demonstration Activities.*   Founded in 1913, Oklahoma NAACP is the oldest civil rights organization in Oklahoma.  Its mission has long been to ensure the political, social, educational, and economic equality of all persons and to eliminate race-based discrimination.  Oklahoma NAACP has a storied history; indeed, in the 1950s and 1960s, its members organized some of the civil rights movement's first sit-ins to protest segregation at local drug stores.  These members were repeatedly arrested during those nonviolent sit-ins, but their demonstrations helped end *de jure* segregation in Oklahoma City.  Ex. 1, Decl. of Anthony Douglas, ¶¶ 2–5.

Oklahoma NAACP and its members exercise their First Amendment rights to speak, assemble, and petition the government for a redress of grievances through organizing or participating in peaceful demonstrations, protests, marches, parades, and similar public gatherings.  These events are designed to influence lawmakers and educate the public by raising awareness of racial-justice and other civil rights issues.  The gatherings are open to the public and draw large numbers of participants who congregate in or march through city streets and sidewalks; chant, yell, and sing; and carry signs and flags.  *Id.* ¶¶ 6–9, 12.

On occasion, participants in these peaceful demonstrations may foreseeably and incidentally violate minor Oklahoma laws while exercising their First Amendment rights. For example, because many Oklahoma NAACP demonstrations are crowded, some participants might stray into the street or fail to cross at the crosswalk.  The organization provides sound amplification at some events, and participants might shout and chant to make their message heard.  Oklahoma NAACP also routinely brings its organizational banner to demonstrations on public property such as the State Capitol grounds.  Some of this conduct could constitute a misdemeanor or other minor infraction under existing Oklahoma law,[1] but Oklahoma NAACP risks the relatively minimal fines that might result, given the centrality of racial-justice demonstrations to the group's mission.  *Id.* ¶¶ 12, 14.

---

[1] *See, e.g.*, Okla. Stat. tit. 47, § 11-506(a) ("Where sidewalks are provided, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway."); *id.* § 11-503 (prohibiting jaywalking); Okla. Stat. tit. 21, § 1362 (classifying as a misdemeanor "willfully or maliciously disturb[ing] . . . the peace and quiet of any city of the first class, town, village, neighborhood, family, or person by loud or unusual noise"); *id.* § 375 (classifying as a misdemeanor "plac[ing], hoist[ing], rais[ing], or display[ing] any flag, standard, colors or ensign," other than enumerated exceptions, on certain public property).

In addition, sometimes Oklahoma NAACP and its members engage in civil disobedience to protest unjust laws by, for example, participating in sit-ins at the State Capitol or interrupting legislative proceedings.  When engaging in civil disobedience, Oklahoma NAACP, consistent with the creed of nonviolent resistance, willingly accepts the minor penalties that result from violating the law.[2]  *Id.* ¶¶ 13–14.  As Dr. Martin Luther King, Jr., explained, "[o]ne who breaks an unjust law must do so openly, lovingly, and with a willingness to accept the penalty . . . in order to arouse the conscience of the community over its injustice."  *Letter from a Birmingham Jail* (1963), https://perma.cc/6KCX-V4GC.

*Oklahoma HB 1674.*  In April 2021, the Governor of Oklahoma signed HB 1674. 2021 Okla. Sess. Laws ch. 106 (to be codified at Okla. Stat. tit. 21, §§ 1312, 1320.11–.12). One of several anti-protest laws enacted by states in the aftermath of the racial-justice demonstrations that swept the country in the summer of 2020,[3] HB 1674 builds on Oklahoma's extensive existing statutory framework that already criminalizes riot, unlawful assembly, and similar conduct.  *See* Okla. Stat. tit. 21, §§ 1311–1320.10.

The existing statutory scheme prohibiting riot and similar crimes poses little threat to Oklahoma NAACP's activities because the organization does not condone, advocate, or participate in violence.  Ex. 1 ¶ 15.  But Oklahoma NAACP cannot always control the

---

[2] *See, e.g.*, Okla. Stat. tit. 21, § 1379.1(A)–(B) (classifying as a misdemeanor "obstruct[ing] or imped[ing] in any way[] passage through or within any state-owned or -leased building, office or facility" or "obstruct[ing] entrances and exits" of the same); *id.* § 302(3) (classifying as a misdemeanor "willfully disturb[ing], disrupt[ing] or interfer[ing] with any session, meeting or proceeding of either house of the State Legislature or any committee of either house of the State Legislature . . . by . . . [m]aking unreasonable noise").

[3] Florida's anti-protest law was preliminarily enjoined on vagueness and overbreadth grounds.  *Dream Defs. v. DeSantis*, 2021 WL 4099437, at *27 (N.D. Fla. Sept. 9, 2021).

actions of the hundreds, and sometimes thousands, of people who attend its public demonstrations and events. *Id.* HB 1674 therefore poses a severe threat to Oklahoma NAACP because the law contains several vague and overbroad provisions that could hold the organization responsible for the independent actions of third parties who attend its events—including a draconian organizational-liability provision that could bankrupt an organization for engaging in First Amendment activity. 2021 Okla. Sess. Laws ch. 106, § 3 ("Organizational-Liability Provision"). In addition, HB 1674 creates a vague and overbroad street-obstruction crime. *Id.* § 1 ("Street-Obstruction Provision").

As explained below, neither provision provides fair notice of the conduct it punishes, and Oklahoma NAACP reasonably fears both provisions could be interpreted to apply to its peaceful demonstrations. As a result, HB 1674 will chill Oklahoma NAACP's First Amendment activity: If the law takes effect, the organization will stop holding certain demonstrations and limit the size of the few events it will continue to conduct. Oklahoma NAACP also will be forced to divert resources away from its core racial-justice mission and toward training aimed at avoiding liability under the new law. Ex. 1 ¶¶ 16–17.

## ARGUMENT

Oklahoma NAACP is entitled to a preliminary injunction to preserve the status quo and "'the relative positions of the parties until a trial on the merits can be held.'" *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1269 (10th Cir. 2018). To obtain a preliminary injunction, the moving party must show that: (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Winter v.*

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Verlo v. Martinez*, 820 F.3d 1113, 1126 (10th Cir. 2016).  When the government is the opposing party, the third and fourth factors merge.  *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020).

## I.       Oklahoma NAACP Is Likely to Prevail on the Merits

Oklahoma NAACP is likely to prevail on the merits of its claims that the vague and overbroad terms of the Organizational-Liability and Street-Obstruction Provisions of HB 1674, 2021 Okla. Sess. Laws ch. 106, §§ 3, 1, violate both the Due Process Clause of the Fourteenth Amendment and the First Amendment.

### A.       HB 1674's Organizational-Liability and Street-Obstruction Provisions Violate Due Process and the First Amendment

#### 1.       The Provisions Violate the Due Process Clause Because They Are Void for Vagueness

The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The Due Process Clause prohibits Oklahoma from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015); *see Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.").  Vague laws are impermissible in part because they "'delegate[] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant

dangers of arbitrary and discriminatory application.'" *Bushco v. Shurtleff*, 729 F.3d 1294, 1308 (10th Cir. 2013) (quoting *Grayned*, 408 U.S. at 108–09).

Under the void-for-vagueness doctrine, laws must (1) "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly" and (2) "provide explicit standards for those who apply them" so as to prevent "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108. "These principles apply not only to statutes defining elements of crimes, but also to statutes fixing" criminal penalties. *Johnson*, 576 U.S. at 596. Both provisions fall well short of this standard.

### a.    *The Organizational-Liability Provision*

HB 1674's Organizational-Liability Provision, 2021 Okla. Sess. Laws ch. 106, § 3, fails to give Oklahoma NAACP reasonable notice regarding whether the organization's demonstration activity will be subject to devastating criminal fines. That provision imposes steep fines on any organization found to be a "conspirator" with any person found to have committed enumerated crimes such as riot, unlawful assembly, or similar offenses:

> If an organization is found to be a conspirator with persons who are found to have committed any of the crimes described in Sections 1311 through 1320.5 and 1320.10 of Title 21 of the Oklahoma Statutes, the conspiring organization shall be punished by a fine that is ten times the amount of said fine authorized by the appropriate provision.

2021 Okla. Sess. Laws ch. 106, § 3. This provision is facially invalid because both the term "conspirator" and the method of calculating the fine are unconstitutionally vague.

*First*, HB 1674 does not define the term "conspirator," nor does it make clear what sorts of crimes might trigger organizational liability. The statutory language states that the "persons" with whom the organization is found to be a conspirator must have been found

to have committed one of the enumerated riot-related crimes.  But the language on its face does not require that the organization itself must have conspired with those persons *to commit one of those same crimes*.

In other words, the provision is vague as to whether organizational liability is triggered only when an organization conspires to commit the riot-related crimes enumerated in the statute, or whether it is triggered by conspiring to commit *any* type of crime—including minor and unrelated offenses—with individuals who independently and unforeseeably also violate Oklahoma's riot-related laws.  As discussed above, Oklahoma NAACP does not engage in or condone violence or riots, but participants in its peaceful demonstrations may sometimes incidentally and foreseeably violate minor laws—such as prohibitions on jaywalking, displaying unsanctioned flags on government property, or making loud noise—or engage in civil disobedience as part of their First Amendment activities.  HB 1674 therefore could potentially subject Oklahoma NAACP to severe fines if it is found to have been a "conspirator" to commit one of those minor crimes with a participant in a peaceful demonstration if that participant is also found to have independently violated one of the riot-related laws.

Moreover, the Organizational-Liability provision includes no geographic, temporal, or causal bounds.  Accordingly, if the organization were, for example, found to be a "conspirator" with a third party to "place, hoist, raise or display" an NAACP banner on public property, Okla. Stat. tit. 21, § 375,[4] and that third party later committed a riot-related

---

[4] This law is also facially unconstitutional.  *See, e.g.*, *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1223–24 (9th Cir. 2003).

8

offense on another day, in another place, the statutory language would potentially subject Oklahoma NAACP to drastic penalties for the third party's actions—even though the organization had no knowledge of or involvement in the riot-related offense.

A separate part of the Oklahoma Penal Code provides a multi-pronged definition of "conspiracy" (although not "conspirator," the term used in the Organizational-Liability Provision).  In relevant part, Section 421(A) of Title 21 provides:

> If two or more persons conspire, either: (1) To commit any crime; or . . . (5) To commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice or the due administration of the laws, they are guilty of a conspiracy.[5]

Even if HB 1674 were to incorporate this definition—which is unclear from HB 1674 itself—reading the law against this backdrop only further demonstrates its vagueness.

Because HB 1674 does not expressly incorporate the existing conspiracy statute, it does not specify which of these various categories of conspiracies, if any, triggers potential organizational liability.   But to the extent the Organizational-Liability provision incorporates subsection (A)(1)—"conspir[ing] . . . [t]o commit *any* crime"—it poses the same vagueness problem presented by HB 1674's plain language, discussed above. Furthermore, if the provision incorporates subsection (A)(5), it is also unconstitutional because subsection (A)(5) is itself facially unconstitutional.  Indeed, the Supreme Court in *Musser v. Utah*, 333 U.S. 95, 97 (1948), concluded that identical language in a Utah statute "would seem to be warrant for conviction for agreement to do almost any act which a judge

---

[5] Section 421 also prohibits conspiring to (2) commit malicious prosecution or false arrest; (3) "[f]alsely . . . move or maintain any suit, action, or proceeding"; (4) engage in fraud.

and jury might find at the moment contrary to his or its notions of what was good for health, morals, trade, commerce, justice or order." The provision is thus invalid under "the Due Process Clause because it fails to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused." *Id.*

*Second*, the Organizational-Liability Provision does not give fair notice regarding the extent of potential liability an organization could face because the law's terms do not make clear whether the penalty applies on a per-conspiracy or per-person basis. The provision states that "[if] an organization is found to be a conspirator with persons" who commit an enumerated offense, "the conspiring organization shall be punished by a fine that is ten times the amount of said fine authorized by the appropriate provision." Because the statute punishes an organization for unrelated crimes committed by its "conspirators," the language is ambiguous as to whether it authorizes a single multiplied fine against an organization deemed a conspirator with multiple persons in a *single conspiracy*, or a multiplied fine for *every person* with whom the organization is deemed to have conspired.

This ambiguity makes it impossible for an organization like Oklahoma NAACP to anticipate the extent of potential liability if this provision were construed to apply to its peaceful demonstrations. The fines for the offenses enumerated in the Organizational-Liability Provision range from $100 to $10,000.[6] Thus, if the fine is calculated on a per-

---

[6] *See* Okla. Stat. tit. 21, §§ 9 (up to $1,000 fine for felonies generally), 10 (up to $500 fine for misdemeanors generally), 1319 (up to $1,000 for resisting execution of legal process), 1320.4 (up to $10,000 fine for incitement to riot), 1320.5 (up to $5,000 fine for unlawful

person basis, an organization could be subject to fines totaling millions of dollars for a single event depending on how many individuals it is deemed to have "conspired" with. But Oklahoma NAACP has no way of knowing for certain from the face of the statute.

### b.    The Street-Obstruction Provision

HB 1674's Street-Obstruction Provision, 2021 Okla. Sess. Laws ch. 106, § 1, is also unconstitutionally vague.  That provision makes it a misdemeanor, punishable by up to a year in jail and a fine up $5,000, to

> unlawfully obstruct the normal use of any public street, highway or road within this state by impeding, hindering or restraining motor vehicle traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of motor vehicles or pedestrians traveling thereon[.]

It defines "obstruct" as "to render impassable or to render passage unreasonably inconvenient or hazardous."  *Id.*  As part of the demonstrations that Oklahoma NAACP organizes, participants sometimes walk up to cars on public streets to distribute leaflets to spread their message. Ex. 1 ¶ 9.  But the Street-Obstruction Provision—which is also one of the enumerated provisions that triggers the enhanced penalties under the Organizational-Liability Provision, 2021 Okla. Sess. Laws ch. 106, § 3—contains several unconstitutionally vague terms that fail to put Oklahoma NAACP or its members on notice as to what conduct qualifies as criminal.

For example, although "obstruct" is defined in part as to "render passage unreasonably inconvenient," that definition is itself subjective and undefined.  The law

---

assembly); 2021 Okla. Sess. Laws ch. 106, § 1 (to be codified at Okla. Stat. tit. 21, § 1312(5)) (fine between $100 and $5,000 for unlawful obstruction of a public street).

includes no guidance regarding what circumstances or amount of inconvenience might make passage "unreasonably inconvenient," which could vary depending on a person's subjective opinion. Indeed, some motorists may find any interruption to their travel, no matter how short, to be unreasonably inconvenient—especially if they do not like the message the demonstrators convey. *See Stahl v. City of St. Louis*, 687 F.3d 1038, 1041 (8th Cir. 2012) (law unconstitutionally vague where it "criminalizes speech if it has the consequence of obstructing traffic, but the speaker does not know if his or her speech is criminal until after such an obstruction occurs"). This lack of precision leaves individuals to guess whether their conduct is unlawful, a circumstance the Constitution does not tolerate. *See, e.g.*, *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971) (prohibition on engaging in conduct "annoying to persons passing by" is unconstitutionally vague); *Bell v. Keating*, 697 F.3d 445, 462 (7th Cir. 2012) (striking down a disorderly conduct law allowing dispersal of crowd for "serious inconvenience" because "the term . . . does not identify what nuisances amount to such inconvenience").

"Obstruct" is also defined as to "render impassible," but this phrase is likewise vague. The law specifies no amount of time the road must be "impassible" before liability attaches. Under the provision's plain language, any amount of time occupying the street— even as short as a few seconds—might trigger liability. Similarly vague is the prohibition against "approaching" vehicles. The statute does not specify how close someone must come to a car before he or she might violate the law. Under the undefined term, a person a block away but walking toward a vehicle could be found to be "approaching."

12

Finally, unlike another provision of Oklahoma law, which makes it a crime to "knowingly and willfully obstruct" public streets, Okla. Stat. tit. 21, § 1754, this law "lacks a scienter requirement," compounding the uncertainty of what it proscribes. *See Galbreath v. City of Okla. City*, 568 F. App'x 534, 541 (10th Cir. 2014); *Bushco*, 729 F.3d at 1306 (emphasizing significance of scienter requirement in overcoming a vagueness challenge).

In contrast to the Street-Obstruction Provision, laws governing the use of streets or sidewalks that have been upheld against vagueness challenges have included language setting out specific parameters that allow an ordinary person to understand the scope of proscribed conduct, express *mens rea* elements, or some combination of both.  For example, in *Hill v. Colorado*, the Supreme Court rejected a vagueness challenge to a law that prohibited "*knowingly* approach[ing] another person *within eight feet* of such person." 530 U.S. 703, 733 (2000) (emphases added).  Likewise, in *United States v. Hunter*, 663 F.3d 1143, 1141–42 (2011), the Tenth Circuit upheld a regulation that prohibited "follow[ing] another vehicle more closely than is reasonable and prudent" because the law included specific considerations, such as speed, traffic, and highway conditions, that aided drivers in determining whether the "reasonable and prudent" standard had been satisfied.

Given the many vague and undefined terms in the Street-Obstruction Provision, it is no wonder that even members of the State Legislature could not explain what conduct would violate this law.  During floor debate, one of the bill's principal authors struggled to articulate a fact pattern that might result in liability, but admitted that mere jaywalking might be sufficient.  HB 1674 Floor Debate, Okla. Senate, Reg. Sess., 10:17:26–10:21:26 (Apr. 14, 2021) (statement of Sen. Standridge), https://oksenate.gov/live-chamber.  When

pressed on what might render "reasonably inconvenient" the normal use of a road, he stated that it is a "high standard," but could not explain further.  *Id.* at 10:20:57–10:21:26.

*      *      *

The vague language of these provisions, therefore, does not give Oklahoma NAACP or its members adequate notice of what conduct is proscribed so that they can conform their activities to the law.  *Grayned*, 408 U.S. at 108; *see Dream Defs.*, 2021 WL 4099437, at *27 (preliminarily enjoining Florida's anti-protest law because "an individual of ordinary intelligence could read the [statute] and not be sure of its real-world consequence").  In addition, "the vagary of this statute empowers law enforcement officers to exercise their authority in arbitrary and discriminatory ways," *Dream Defs.*, 2021 WL 4099437, at *27—a particularly acute risk where, as here, the organization engages in constitutionally protected speech against police misconduct and racial injustice and is often critical of the very government actors charged with policing violations of the law.  *See Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 794 (9th Cir. 2008) (holding Seattle's parade ordinance unconstitutionally vague, explaining "[t]he danger of abuse" is especially acute "where the speech the [plaintiff] seeks to engage in—protesting police brutality—is directly critical of the governmental body that administers Seattle's permit scheme").

2.      <strong>The Provisions Violate the First Amendment Because They Penalize a Substantial Amount of Protected Activity</strong>

For many of the same reasons the Organizational-Liability and Street-Obstruction Provisions are void for vagueness under the Due Process Clause, they also violate the First

14

Amendment.  The First Amendment to the U.S. Constitution, which applies to the states through the Fourteenth Amendment, prohibits the State of Oklahoma from "abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  In addition, the First Amendment protects a corollary "right to associate for the purpose of engaging in those activities protected by the First Amendment . . . as an indispensable means of preserving other individual liberties."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  A law is facially invalid under the First Amendment if "'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'"  *United States v. Stevens*, 559 U.S. 460, 473 (2010).

The Supreme Court has long recognized that vaguely worded statutes can be facially overbroad under the First Amendment because they impermissibly regulate a substantial amount of protected activity.  "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."  *NAACP v. Button*, 371 U.S. 415, 433 (1963).  Where a statute is imprecisely worded, the "threat of sanctions may deter their exercise almost as potently as the actual application of sanctions," so "standards of permissible statutory vagueness are strict in the area of free expression," and "[p]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms."  *Id.* at 433, 432, 438; *Smith v. Goguen*, 415 U.S. 566, 573 (1974) ("Where a statute's literal scope . . . is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.").

### a.     The Organizational-Liability Provision

At least two features of the Organizational-Liability Provision violate the First Amendment.  *First*, for the same reasons the term "conspirator" is unconstitutionally vague, that term is also overbroad.  As discussed above, the term is so capacious that, even though Oklahoma NAACP has no intention of violating Oklahoma's anti-riot or unlawful-assembly laws, the organization could be deemed a "conspirator" with demonstrators who independently commit those crimes and would thus be subject to multiplied penalties. Accordingly, the law would effectively punish Oklahoma NAACP or its members for crimes they did not commit based on an impermissible "guilt by association" theory.  The Supreme Court has repeatedly made clear that the Constitution does not tolerate such schemes, which impair speech and the First Amendment right to association.

Against decades of hostility from state attempts to intimidate, thwart, and burden NAACP's advocacy, "[t]he associational rights of the NAACP and its members have been recognized repeatedly by [the Supreme] Court."  *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 930 (1982) (collecting cases).  This "freedom of individuals to associate for the collective advocacy of ideas . . . [is] 'protected not only against heavy-handed frontal attack, but also from being stifled by more subtle governmental interference.'"  *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 309–10 (1964).  Importantly for present purposes, "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected."  *Claiborne Hardware*, 458 U.S. at 908.

In *Claiborne Hardware*, for example, the NAACP led a constitutionally protected

boycott against certain businesses in Alabama that engaged in racial discrimination. *Id.* at 907–08. When some boycott participants also committed acts of violence, which the NAACP did not condone and over which it had no control, the NAACP was sued by the local businesses and held liable for all of the businesses' lost earnings attributable to the boycott. *Id.* at 898–906. The Supreme Court concluded that the organization could not be held liable for the violent acts of third parties who participated in the boycott, explaining that, given the First Amendment interests at stake, "liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence." *Id.* at 920. Instead, "[f]or liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Id.* This "specific intent" is a demanding standard "judged 'according to the strictest law.'" *Id.* at 919.

The same reasoning applies here. The overbroad Organizational-Liability Provision threatens to impose devastating fines on Oklahoma NAACP, which organizes peaceful First Amendment activity, for its mere association with third-party demonstrators who may independently and unforeseeably also engage in violence. Oklahoma NAACP organizes nonviolent demonstrations that sometimes attract thousands of participants; it never condones but cannot always prevent riot or similar crimes committed by individuals who also might have attended one of the organization's events. Ex. 1 ¶ 15. Because HB 1674 does not require Oklahoma NAACP to share those third parties' specific intent to commit such crimes, the law may improperly subject the organization to liability for those crimes simply by virtue of whom the organization associates with. This outcome would run

counter to the Supreme Court's admonition that, "[i]n this sensitive field, the State may not employ means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Claiborne Hardware*, 458 U.S. at 920 (internal quotation marks omitted); *see Dream Defs.*, 2021 WL 4099437, at *29 (enjoining Florida's anti-protest law where "the lawless actions of a few rogue individuals could effectively criminalize the protected speech of hundreds, if not thousands, of law-abiding Floridians.").

*Second*, to the extent that the Organizational-Liability Provision incorporates the definition of "conspiracy" in section 421(A) (5) of Title 21, it is overbroad for another reason.  As explained above, subsection (A)(5) 's broad definition of conspiracy includes an "agreement to do almost any act which a judge and jury might find at the moment contrary to his or its notions of what was good for health, morals, trade, commerce, justice or order." *Musser*, 333 U.S. at 97.  Not only is this language unconstitutionally vague, but it also could easily be used to target virtually any demonstration that a prosecutor finds objectionable based on the content of the message expressed.  The inevitable consequence is an impermissible chilling effect on a wide swath of protected First Amendment activity. *See Stevens*, 559 U.S. at 480 (striking down a law whose overbroad language vested too much discretion in prosecutors to interpret its terms, explaining, "the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*").

### b. *The Street-Obstruction Provision*

The Street-Obstruction Provision also violates the First Amendment.  *First*, its vague terms are also overbroad.  As discussed above, that provision criminalizes "obstructing the normal use of any public street" by "standing" or "approaching" cars and

18

rendering the street "impassible" or "passage unreasonably inconvenient." 2021 Okla. Sess. Laws ch. 106, § 1. These terms are so broad that they threaten to sweep in all manner of First Amendment activity in which Oklahoma NAACP members regularly engage, like walking toward cars to distribute leaflets or share their message with drivers. The Supreme Court, however, has made clear that such pamphleteering and one-on-one communications are core First Amendment activities. *McCullen v. Coakley*, 573 U.S. 464, 488 (2014). In particular, "'one-on-one communication' is 'the most effective, fundamental, and perhaps economical avenue of political discourse,'" and "'handing out leaflets in the advocacy of a politically controversial viewpoint . . . is the essence of First Amendment expression.'" *Id.* at 488–89. Indeed, "[n]o form of speech is entitled to greater constitutional protection"; therefore, "[w]hen the government makes it more difficult to engage in these modes of communication, it imposes an especially significant First Amendment burden." *Id.* at 489.

The indeterminacy of the phrase "unreasonably inconvenient" only exacerbates these problems. It is well established that "[t]he First and Fourteenth Amendments do not permit a State to make criminal the exercise of the right of assembly simply because its exercise may be 'annoying' to some people," *Coates*, 402 U.S. at 615, and the same is true if some might find the exercise of First Amendment rights to be "inconvenient," *Bell*, 697 F.3d at 462 (striking down, on First Amendment and vagueness grounds, a law that allows police to disperse a crowd on the basis of "serious inconvenience"); *see also McCullen*, 573 U.S. at 486 (such laws must be closely scrutinized because "[t]he government may attempt to suppress speech not only because it disagrees with the message being expressed, but also for mere convenience"); *Citizens for Responsible Gov't State Pol. Action Comm.*

*v. Davidson*, 236 F.3d 1174, 1199 (10th Cir. 2000) ("convenience of citizens" is not a compelling state interest). The fact that "on public streets and sidewalks" one cannot "turn the page, change the channel, or leave the Web site" to avoid "speech he might otherwise tune out" is "a virtue, not a vice," under the First Amendment. *McCullen*, 573 U.S. at 476.

*Second*, even aside from being overbroad, the Street-Obstruction Provision violates the First Amendment because it restricts speech in a traditional public forum and is not narrowly tailored to achieve a substantial government interest. "'[A]ll public streets are held in the public trust and are properly considered traditional public fora.'" *Faustin v. City, Cnty. of Denver*, 268 F.3d 942, 949 (10th Cir. 2001) (quoting *Frisby v. Schultz*, 487 U.S. 474, 481 (1988)); *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1067–68 (10th Cir. 2020) ("[P]ublic streets . . . are quintessential public fora."). Accordingly, "the government's ability to restrict speech in such locations is 'very limited.'" *McCullen*, 573 U.S. at 477. "Because a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985). Even assuming the intermediate-scrutiny test that applies to content-neutral time, place, and manner restrictions applies here, the State cannot meet its burden "to demonstrate that less burdensome alternatives would not achieve its interest."[7] *McCraw*, 973 F.3d at 1074.

---

[7] Because the Street-Obstruction Provision fails intermediate scrutiny, the Court need not decide whether strict scrutiny applies. *See, e.g.*, *McCraw*, 973 F.3d at 1071 n.8 (declining to "delve into whether its ostensible content-neutrality is instead camouflage" for content-

To satisfy intermediate scrutiny, a law "must not only promote 'a substantial government interest,' but that interest must 'be achieved less effectively absent the regulation, and . . . not burden substantially more speech than is necessary to further the government's legitimate interests.'" *Id.* at 1073. The Street-Obstruction provision fails this test because it lacks a "close fit between ends and means to ensure speech is not sacrificed for efficiency." *Id.* (internal quotation marks omitted). As explained above, its vague and overbroad terms encompass a substantial amount of expressive activity and fail to minimize intrusion on First Amendment rights. Moreover, Oklahoma has several existing laws that advance the same interests that the provision purportedly serves. *See id.* at 1076 (law not narrowly tailored where "City has existing laws that could advance [the same] interest"). These laws include a criminal prohibition on "knowingly and willfully obstruct[ing]" public streets, Okla. Stat. tit. 21, § 1754, and an extensive statutory regime criminalizing riot and similar crimes, *id.*, §§ 1311–1320.10. The Street-Obstruction Provision therefore is not sufficiently tailored and should be struck down on that basis too.

## II.    Oklahoma NAACP Will Suffer Irreparable Harm Absent an Injunction

Because the challenged provisions of HB 1674 will violate Oklahoma NAACP's Due Process and First Amendment rights if they take effect, the organization will suffer irreparable harm absent injunctive relief. The Tenth Circuit has made clear that "[a]ny deprivation of any constitutional right" renders an injury "irreparable." *Free the Nipple-*

---

based animus" where an ordinance failed intermediate scrutiny); *but see Rodgers v. Stachey*, 382 F. Supp. 3d 869, 882 (W.D. Ark. 2019) (law prohibiting physical interaction between motor vehicle and pedestrian was content-based law subject to strict scrutiny).

*Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019).  Indeed, "'[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'"  *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012).

This principle applies with even more force when the constitutional injury implicates the First Amendment:   "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Verlo*, 820 F.3d at 1127.  Therefore, when "first amendment rights are infringed, irreparable injury is presumed."  *Planned Parenthood of Ark. & E. Okla. v. Cline*, 910 F. Supp. 2d 1300, 1308 (W.D. Okla. 2012); *see Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1190 (10th Cir. 2003); *Cmty. Commc'ns Co., Inc. v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981).  Even where the Tenth Circuit has determined that the challenged restriction would cause "minimal" harm, it has nonetheless has held this factor to be satisfied because "precedents dictate that [courts] treat alleged First Amendment harms gingerly."  *Heideman*, 348 F.3d at 1190 (addressing First Amendment restrictions in context of nude dancing).

Here, however, Oklahoma NAACP's constitutional injuries will be far from minimal if HB 1674 is allowed to take effect.  By potentially subjecting Oklahoma NAACP to debilitating fines—which could total millions of dollars per demonstration—and failing to provide adequate notice of what conduct is actually proscribed, HB 1674 threatens to bankrupt Oklahoma NAACP for engaging in First Amendment activity.  The result will be an obvious and impermissible chilling effect:  Oklahoma NAACP will have no choice but to significantly curtail its political speech and refrain from organizing or attending certain

22

protests, demonstrations, and public gatherings; associating with other organizations and individuals; and engaging in expressive activity such as leafletting in public streets. Ex. 1 ¶¶ 15–17.  This type of advocacy—which sometimes is planned well in advance and other times takes shape quickly—is core to Oklahoma NAACP's mission, and at this moment in history, the organization must be able to respond to current events by organizing First Amendment activity.  Over the past few years alone, the organization has held public gatherings to support striking teachers and advocate for fair pay for school employees; honor Dr. Martin Luther King, Jr.; demand justice for people killed by law enforcement in Oklahoma and around the country; and challenge actions taken by the Oklahoma state legislature.  *Id.* ¶ 6.  Oklahoma NAACP has also already begun planning a number of future public events, including voting rights protests and marches for the winter and spring of next year and a series of rallies and events to commemorate Black History Month in February 2022.  *Id.* ¶ 8.  The First Amendment unquestionably guarantees Oklahoma NAACP the right to engage in this sort of advocacy, but when HB 1674 goes into effect on November 1, the organization will be required to choose between continuing to spread its message and possibly being fined out of existence.  This harm is precisely the type of irreparable injury that warrants a preliminary injunction.

### III.  The Balance of Equities Tips in Oklahoma NAACP's Favor and Injunctive Relief Serves the Public Interest

The balance of equities and the public interest also favor Oklahoma NAACP because the irreparable constitutional injuries described above far outweigh any marginal

burden on Defendants that might result from delaying the challenged provisions' effective date pending an adjudication on the merits.

"When a constitutional right hangs in the balance . . . 'even a temporary loss' usually trumps any harm to the defendant." *Free the Nipple*, 916 F.3d at 806. And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Verlo*, 820 F.3d at 1127. In particular, "[v]indicating First Amendment freedoms is clearly in the public interest," *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1237 (10th Cir. 2005), because "[d]iscussion of public issues" is "integral to the operation of the system of government established by our Constitution," *Buckley v. Valeo*, 424 U.S. 1, 14 (1976); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964) (describing "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open"). These principles apply even where the speaker expresses unpopular or controversial views. In a 1965 case reversing the convictions of civil rights activists who engaged in peaceful protest, the Supreme Court explained:

> [A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech is protected against censorship or punishment. There is no room under our Constitution for a more restrictive view.

*Cox v. Louisiana*, 379 U.S. 536, 551–52 (1965) (internal quotation marks and alterations omitted). Injunctive relief in this case would serve these important interests by allowing Oklahoma NAACP to continue its long tradition of enriching the public debate on

24

important racial-justice issues through its expressive activities.  Allowing the law to go into effect "would substantially impair" Oklahoma NAACP's ability to convey its message to its intended audience through the threat of devastating fines that could bankrupt the organization.  *Verlo*, 820 F.3d at 1127.

Any purported State interest in the challenged provisions of HB 1674 taking effect cannot overcome these weighty interests.  Although a plaintiff has an interest in "having [its] constitutional rights protected," *Awad*, 670 F.3d at 1131, the State "has no interest in keeping an unconstitutional law on the books," *Free the Nipple*, 916 F.3d at 806. Moreover, to the extent the State might contend that the challenged provisions of HB 1674 are necessary to protect public safety, that interest is diminished given Oklahoma's already extensive statutory scheme criminalizing riots and related conduct and its existing prohibition on obstructing public streets.  *See* Okla. Stat. tit. 21, §§ 1311–1320.10, § 1754. It is axiomatic that "[d]elayed implementation of a measure that does not appear to address any immediate problem will generally not cause material harm."  *Awad*, 670 F.3d at 1132; *see also Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (state's "interest in protecting its citizens from crime" does not outweigh the "'significant public interest in upholding First Amendment principles'" where state "can still employ other methods" to achieve the same goal).  Oklahoma NAACP is accordingly entitled to a preliminary injunction.

## CONCLUSION

For the foregoing reasons, this Court should grant Oklahoma NAACP's Motion for a Preliminary Injunction.

Respectfully submitted,

RIGGS, ABNEY, NEAL, TURPEN,
  ORBISON & LEWIS

s/ Melvin C. Hall
Melvin C. Hall, OBA No. 3728
528 NW 12th Street
Oklahoma City, Oklahoma 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
mhall@riggsabney.com

Jonathan L. Backer*
Mary B. McCord*
Joseph W. Mead [i]*
Annie L. Owens*
INSTITUTE FOR CONSTITUTIONAL ADVOCACY
  AND PROTECTION
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, D.C. 20001
(202) 662-9835
ao700@georgetown.edu

[i] *Not admitted to practice in District of Columbia*
*Admitted pro hac vice*

Janette Louard†
Anthony P. Ashton†
Joseph R. Schottenfeld†
NAACP
Office of General Counsel
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5777
aashton@naacpnet.org
*Attorneys for Plaintiffs*

† *Admission pro hac vice pending*

Dated: September 14, 2021

26