21-CV-0859-C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

OKLAHOMA STATE CONFERENCE of the NAACP,

*Plaintiff,*

v.

JOHN M. O'CONNOR, *in his official capacity as*
Oklahoma Attorney General, &

DAVID PRATER, *in his official capacity as*
District Attorney of Oklahoma County,

*Defendants.*

RESPONSE TO PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

BACKGROUND ....................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.    **Plaintiff is unlikely to succeed on the claim that H.B. 1674 is unconstitutionally vague.** ................................................................................... **3**

    A.    Section 3's specification of a penalty for an organizational conspirator to a riot is not unconstitutionally vague. ....................................................... 4

    B.    Section 1's specification of a penalty for roadway obstruction while rioting is not unconstitutionally vague. ....................................................... 8

II.    **Plaintiffs are unlikely to succeed on their claim H.B. 1674 facially violates the First Amendment.** ....................................................................... **13**

    A.    Section 3's penalty for conspiring to violation Oklahoma's riot-related laws does not violate the First Amendment. ............................................. 14

    B.    Section 1's penalty for unlawfully blocking a roadway while rioting does not unconstitutionally infringe on protected speech. .............................. 17

III.    **The balance of equities counsel against injunction.** ....................................... **20**

**CONCLUSION** ........................................................................................................ **21**

# TABLE OF AUTHORITIES

**Cases**

*Am. Commc'ns Assn. v. Douds,*
    339 U.S. 382 (1950) ................................................................................. 12

*Am. Steel Foundries v. Tri–City Central Trades Council,*
    257 U.S. 184 (1921) ................................................................................. 18

*Bauer v. State,*
    1910 OK CR 57, 107 P. 525, 526 .............................................................. 5

*Bond v. United States,*
    572 U.S. 844 (2014) ................................................................................. 10

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973) ................................................................................. 13

*Cameron v. Johnson,*
    390 U.S. 611 (1968) ................................................................................. 10

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ................................................................................. 16

*Coates v. Cincinnati,*
    402 U.S. 611 (1971) ................................................................................. 17

*Cornelius v. NAACP Legal Def. & Educ. Fund., Inc.,*
    473 U.S. 788 (1985) ................................................................................. 14

*Erznoznik v. Jacksonville,*
    422 U.S. 205 (1975) ................................................................................. 18

*Evans v. Sandy City,*
    944 F.3d 847 (10th Cir. 2019), *cert. denied sub nom.*
    *Evans v. Sandy City, Utah,* 141 S. Ct. 235 (2020) ................................... 14

*Faustin v. City & Cty. of Denver, Colo.,*
    423 F.3d 1192 (10th Cir. 2005) ................................................................. 18

*Frisby v. Schultz,*
    487 U.S. 474 (1988) ................................................................................. 17

*Giboney v. Empire Storage & Ice Co.,*
    336 U.S. 490 (1949) ................................................................................. 15

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972) ................................................................................. 12

*Hackney v. State,*
    1994 OK CR 29, 874 P.2d 810 .............................................................. 7, 16

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (2000) ............................................................................................... 6

*Hill v. Colorado,*
530 U.S. 703 (2000) ....................................................................................12, 17

*Holder v. Humanitarian Law Project,*
561 U.S. 1 (2010) ............................................................................................. 12

*Laird v. Tatum,*
408 U.S. 1 (1972) ............................................................................................. 16

*Langford v. City of St. Louis, Missouri,*
3 F.4th 1054 (8th Cir. 2021), *reh'g denied* (Sept. 15, 2021) ...................10, 18

*Littlejohn v. State,*
2008 OK CR 12, 181 P.3d 736 .......................................................................... 4

*Maryland v. King,*
133 S. Ct. 1 (2012) ........................................................................................... 21

*McGee v. State,*
2005 OK CR 30, 127 P.3d 1147 ........................................................................ 5

*Molina v. State,*
244 Md. App. 67, 222 A.3d 222 (2019) ............................................................ 7

*Molina v. State,*
244 Md. App. 67, 222 A.3d 222, (2019) ........................................................... 5

*Munaf v. Geren,*
553 U.S. 674 (2008) .......................................................................................... 2

*NAACP v. Claiborne Hardware Co.,*
458 U.S. 886 (1982) ....................................................................................14, 16

*New York v. Ferber,*
458 U.S. 747 (1982) ......................................................................................... 15

*Nken v. Holder,*
556 U.S. 418 (2009) ......................................................................................... 20

*Pinkerton v. United States,*
328 U.S. 640 (1946) ........................................................................................... 7

*Roth v. United States,*
354 U.S. 476 (1957) ........................................................................................... 4

*Samantar v. Yousuf,*
560 U.S. 305 (2010) ........................................................................................... 6

*Samuels v. Mackell,*
401 U.S. 66 (1971) ........................................................................................... 15

*Schrier v. Univ. Of Colo.*,
   427 F.3d 1253 (10th Cir. 2005) ................................................................. 3

*Singleton v. Darby*,
   609 F. App'x 190 (5th Cir. 2015) ............................................................. 18

*State v. Harton*,
   108 S.W.3d 253 (Tenn. Crim. App. 2002) ............................................... 9

*United States v. Agnew*,
   931 F.2d 1397 (10th Cir. 1991) .............................................................. 11

*United States v. Daley*, 378 F. Supp. 3d 539 (W.D. Va. 2019),
   *aff'd sub nom. United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020),
   *cert. denied,* No. 20-1241, 2021 WL 2405168 (U.S. June 14, 2021), and
   *cert. denied sub nom. Daley v. United States*, No. 20-7377, 2021 WL 2405169
   (U.S. June 14, 2021) ................................................................................ 19

*United States v. Hunter*,
   663 F.3d 1136 (10th Cir. 2011) ........................................................4, 9, 10

*United States v. Nat'l Dairy Products Corp.*,
   372 U.S. 29 (1963) ...............................................................................9, 12

*United States v. Ragen*,
   314 U.S. 513 (1942) ................................................................................. 9

*United States v. Raines*,
   362 U.S. 17 (1960) ................................................................................. 13

*United States v. Richardson*,
   532 F.3d 1279 (11th Cir. 2008) ............................................................... 7

*United States v. Rowlee*,
   899 F.2d 1275 (2d Cir. 1990) ................................................................ 15

*United States v. Salerno*,
   481 U.S. 739 (1987) ............................................................................... 13

*United States v. Varani*,
   435 F.2d 758 (6th Cir. 1970) ................................................................. 15

*United States v. Welch*,
   327 F.3d 1081 (10th Cir. 2003) ..................................................... 3, 10, 11

*United States v. Williams*,
   553 U.S. 285 (2008) .........................................................................*passim*

*Vann v. State*,
   207 P. 102 (1922) .................................................................................... 7

*Virginia v. Hicks*,
   539 U.S. 113 (2003) ............................................................................... 14

*Ward v. Rock Against Racism*,
491 U.S. 781 (1989) ...................................................................................3, 17

*Ward v. Utah*,
398 F.3d 1239 (10th Cir. 2005) .................................................................. 13

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008) ...................................................................................... 13

**Statutes**

2021 Okla. Sess. Laws ch. 106 ..............................................................*passim*

18 U.S.C. § 2101 ................................................................................................ 19

Okla. Stat. tit. 12, § 2 ....................................................................................... 5

Okla. Stat. tit. 21, § 421 .................................................................................. 5

Okla. Stat. tit. 21, §§ 1311-1320.5 ............................................................... 1

Okla. Stat. tit. 21, § 1311 ..................................................................1, 7, 20

Okla. Stat. tit. 21, § 1312 ............................................................................1, 2

Okla. Stat. tit. 21, § 1320.12 ......................................................................... 1

Okla. Stat. tit. 21, § 1320.8 ......................................................................... 11

Okla. Stat. tit. 21, § 1402 ............................................................................... 5

Okla. Stat. tit. 21, § 1403 ............................................................................... 5

Okla. Stat. tit. 21, § 1754 .............................................................................. 19

**Other Authorities**

OUJI-CR 2-19A ................................................................................................. 5

OUJI-CR 2-22 .................................................................................................... 5

**Regulations**

OKC Code of Ord. ch. 50, §50-267 ............................................................ 20

Tulsa Rev. Ord. tit 37, ch. 14, § 1403 ...................................................... 21

## BACKGROUND

Riots, routs, and unlawful assemblies have long been crimes under Oklahoma statute, carrying penalties that vary from misdemeanor to felony based on the severity of any additional underlying crimes or aggravating circumstances. *See* OKLA. STAT. tit. 21, §§ 1311-1320.5, 1320.10 (collectively, "riot-related laws"). Under Oklahoma law, "[a]ny use of force or violence, or any threat to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot." *Id.* at § 1311. The penalty for committing a riot starts as a misdemeanor offense and is enhanced based on the exact conduct at issue. *See id.* at § 1312. For example, if a murder is committed during the course of a riot, then the rioter is "punishable in the same manner as a principle in such crime." *Id.* at § 1312(1). Similarly, the penalty provisions provide a penalty of 2 to 10 years imprisonment if the riot was for certain purposes relating to obstruction of justice. *Id.* at § 1312(2). A similar punishment is levied on those who rioted in disguise or carried a deadly or dangerous weapon while rioting. *Id.* at § 1312(3). Meanwhile, a punishment of 2 to 20 years in prison is reserved for those who "directed, advised, encouraged or solicited other persons, who participated in the riot to acts of force or violence." *Id.* at § 1312(4). Absent enhanced penalties, those guilty of a riot are punishable only for a misdemeanor. *Id.* at § 1312(5).

H.B. 1674—the law Plaintiff seeks to preliminarily enjoin here—made three changes to these riot-related laws. One section of the law is not challenged and relates to the liability of those fleeing a riot. Another—Section 1 of H.B. 1674—made various changes to the riot penalty provision, including adding a new enhanced category of penalty:

Every person guilty of participating in any riot is punishable as follows: …

> 5. Every person who shall unlawfully obstruct the normal use of any public street, highway or road within this state by impeding, hindering or restraining motor vehicle traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of motor vehicles or pedestrians traveling thereon shall, upon conviction, be guilty of a misdemeanor punishable by imprisonment in the county jail for a term not exceeding one (1) year, or by a fine of not less than One Hundred Dollars ($100.00) and not exceeding Five Thousand Dollars ($5,000.00), or by both such fine and imprisonment.  In addition, the person shall be liable for all damages to person or property by reason of the same.

2021 Okla. Sess. Laws ch. 106, § 1 (to be codified at OKLA. STAT. tit. 21, § 1312).

Finally, Section 3 of H.B. 1674 specified a new riot-related offense: "If an organization is found to be a conspirator with persons who are found to have committed any of the [riot-related laws], the conspiring organization shall be punished by a fine that is ten times the amount of said fine authorized by the appropriate provision." *Id.* at § 3.

Plaintiff challenges Sections 1 and 3 of H.B. 1674 solely in its organizational capacity on the grounds that these laws are unconstitutionally vague under the Fourteenth Amendment's due process clause and are violative of the First Amendment. Plaintiff, which disclaims any violence or threats of violence in its planned activities, *e.g.*, Mot. at 4, 8, 17; Compl. at ¶¶ 11, 31, 47, fears these anti-riot laws will be applied to it directly or indirectly, despite "riot" being statutorily defined to involve only acts with the "use of force or violence, or any threat to use force or violence," OKLA. STAT. tit. 21, § 1312. Plaintiff seeks a preliminary injunction against Sections 1 and 3 of H.B. 1674.

2

## ARGUMENT

Preliminary injunctive relief is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). "[T]he right to relief must be clear and unequivocal." *Schrier v. Univ. Of Colo.*, 427 F.3d 1253 (10th Cir. 2005). To obtain a preliminary injunction, Plaintiffs must show that they are entitled to such relief based on four factors: (1) a substantial likelihood that Plaintiffs will prevail on the merits; (2) Plaintiffs will suffer irreparable harm unless the injunction issues; (3) the harm to Plaintiffs outweigh the harm to Oklahoma; and (4) issuing an injunction would be in the public interest. *See id.* Plaintiff has failed to meet that burden.

## I.   Plaintiff is unlikely to succeed on the claim that H.B. 1674 is unconstitutionally vague.

A law is unconstitutionally vague in violation of the constitutional guarantees of due process only if the statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Under this standard, the Supreme Court's cases have tended to invalidate statutes that require "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Id.* at 306. Ambiguity, or the possibility of multiple interpretations, does not automatically make a statute unconstitutionally vague—otherwise, courts would never have to engage in statutory interpretation. That is, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at 304 (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989)). And "that close cases can be envisioned [does not] render[] a statute vague" because "[c]lose cases can be imagined under virtually any statute." *Id.* at 305-06. "The

3

Constitution does not impose impossible standards of specificity upon legislatures." *United States v. Welch*, 327 F.3d 1081, 1094 (10th Cir. 2003) (citation and internal marks omitted).

Rather, "[w]hen a court considers a vagueness challenge to a penal statute, it must begin with 'the presumption that the statute comports with the requirements of federal due process and must be upheld unless satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution.'" *United States v. Hunter*, 663 F.3d 1136, 1141 (10th Cir. 2011) (citation omitted). "[A]ll that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Roth v. United States*, 354 U.S. 476, 491 (1957) (citation and internal marks omitted).

### A.   Section 3's specification of a penalty for an organizational conspirator to a riot is not unconstitutionally vague.

Plaintiffs attempt to manufacture ambiguity from the text of H.B. 1674, but whatever question may exist concerning how to interpret that law in difficult cases, the law by no means meets the high standard of being so vague as to be facially unconstitutional. The Fourteenth Amendment's Due Process Clause is not an invitation to flyspeck a statute, hunt for any conceivable ambiguity, and use even the slightest uncertainty to invalidate it as unconstitutionally vague on its face.

Plaintiff first argues that the term "conspirator" is unconstitutionally vague on its face. Mot. 7-10. But far from being vague, the concept of conspiracy, and who is a conspirator, is well-established in American law. Before declaring a statute void, this Court must look to "statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306. Here, the concept of conspiracy is settled. Under Oklahoma law, "[c]onspiracy, by definition,

requires proof of an agreement between several persons." *Littlejohn v. State*, 2008 OK CR 12, ¶ 19, 181 P.3d 736, 742 (discussing OKLA. STAT. tit. 21, § 421(A)); *see also McGee v. State*, 2005 OK CR 30, ¶ 3, 127 P.3d 1147, 1149 (overturning conviction of conspiracy to traffic illegal drugs for lack of sufficient evidence that there was an agreement). Oklahoma's jury instructions define "conspirator" as "one who enters into an unlawful agreement between two or more persons in order to accomplish some unlawful purpose, or to accomplish some lawful purpose by unlawful means." OUJI-CR 2-22; *see also id.* (attaching the mens rea of "maliciously" to conspiracy charges).

To be liable for conspiracy, the commission of the underlying act must be "in furtherance of [or] … a foreseeable consequence of" the conspiracy. OUJI-CR 2-19A. This has been the law since statehood. *See, e.g., Bauer v. State*, 1910 OK CR 57, 107 P. 525, 526 ("A 'conspiracy' is a combination of two or more persons by concerted action to accomplish some criminal or unlawful purpose." If there is no "combination, agreement, or understanding," there is no conspiracy.). Indeed, Oklahoma's conspiracy law is no different from that of many other states and finds root in the well-established common law definition. *See, e.g., Molina v. State*, 244 Md. App. 67, 167, 222 A.3d 222, 280 (2019); *see also* OKLA. STAT. tit. 12, § 2 ("The common law … shall remain in force in aid of the general statutes of Oklahoma."). Even before H.B. 1674, it was already possible for an organization to be guilty of conspiracy. *E.g.* OKLA. STAT. tit. 21, § 421(A)(1); tit. 22, §§ 1402(7), (10)(u), 1403. H.B. 1674 only adds specific liability provisions for doing so when the conspiracy involves a riot-related crime. There's nothing vague about this.

5

Plaintiffs attempt to raise questions about whether an organization may be held liable under Section 3 for conspiring to commit crimes that do *not* violate the riot-related laws (like jaywalking or trespassing), merely because the co-conspirator also was guilty of riot. Mot. at 1-2, 7-8. But that is an untenable reading of the statute. Courts do not "construe statutory phrases in isolation; we read statutes as a whole." *Samantar v. Yousuf*, 560 U.S. 305, 319 (2010) (citation omitted). Here, the statute creates a penalty when "an organization is found to be a conspirator with persons who are found to have committed any of the crimes described in Sections 1311 through 1320.5 and 1320.10 of Title 21 of the Oklahoma Statutes," that is, the riot-related laws. H.B. 1674, § 3. When a statute defines an offense and then in the next clause specifies a penalty, the clear implication of any ordinary reading is that the penalty is for committing the offense defined in the sentence. Similarly, when a statute creates liability for a conspiring with a person who commits specific crime, the context makes pellucid that the liability is for conspiring with that person to commit that specified crime, not some other crime that has gone completely unmentioned.

The statute thus creates liability for conspiring to violate Oklahoma's riot-related laws, not conspiracy to violate *any* criminal law. This is made doubly clear by the law's placement in the portion of Oklahoma law regarding "Riots and Unlawful Assemblies."  Indeed, Plaintiff's construction borders on absurd, making it an impermissible interpretation of the statute. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000). A plaintiff's strained and unreasonable reading of a statute, violating multiple canons of interpretation, is not enough to show that it is unconstitutionally vague.

Plaintiff also pretends to be confused about how the fine imposed by Section 3 will be calculated. Again, turning to the text, the meaning is sufficiently clear. Section 3 lays out a two-step framework. First, "persons" (plural) must have been found to have committed any one of the riot-related crimes. Second, the organization must be found to be a conspirator of the aforementioned "persons"—in the plural, requiring an act in furtherance of a riot-related crime or that a riot-related crime is the foreseeable consequence of the act. After all, both riot and conspiracy are inherently offenses that require multiple persons. *See, e.g.*, OKLA. STAT. tit. 21, § 1311. This forecloses the Plaintiff's odd reading that fines on an organization can be levied based on the number of persons that participated in the conspiracy. Only if the organization is found guilty of multiple conspiracies would multiple fines attach.

Again, this is the well-settled nature of conspiracy law. In general, multiple liability under conspiracy law does not turn on the number of conspirators, but on the number of conspiracies. *See, e.g., Molina v. State*, 244 Md. App. 67, 169, 222 A.3d 222, 281 (2019) (citations and quotations omitted) ("The conviction of a defendant for more than one conspiracy turns … on whether there exists more than one unlawful agreement."). While "[i]t is often possible … to divide a single conspiracy into sub-agreements[,] [t]his does not, however, mean that more than one conspiracy exists." *United States v. Richardson*, 532 F.3d 1279, 1285 (11th Cir. 2008). When only a single conspiracy is proven "no penalty greater than the maximum provided for one conspiracy may be imposed." *Pinkerton v. United States*, 328 U.S. 640, 643 (1946). Oklahoma law is no different: "If there are two or more independent felonious conspiracies entered into by some of the parties, the participants in either will be held for the results of only the conspiracy in which he may have participated, and will not be held

7

accountable for another conspiracy with which he was not connected." *Vann v. State*, 207 P. 102, 103 (1922); *Hackney v. State*, 1994 OK CR 29, 874 P.2d 810, 814 ("Mere presence at or acquiescence in a crime without participation does not equal a crime."). Plaintiff's unrealistically broad reading of the text does not serve to transform an otherwise clear statute into an unconstitutionally vague one.

**B.      Section 1's specification of a penalty for roadway obstruction while rioting is not unconstitutionally vague.**

As with Section 3, Plaintiff attempts to manufacture ambiguity in Section 1 of H.B. 1674, but none demonstrate the law is unconstitutionally vague. To start, the statutory section—titled "Penalties for Riot"—applies only after a person is found "guilty of participating in any riot." 2021 Okla. Sess. Laws ch. 106, § 1. Each of the provisions in the statutory section apply to those guilty of riot, including the new roadway obstruction penalty provision challenged by Plaintiff. If the individual is not participating in a riot, then the punishments established in new paragraph 5 of section 1312 (created by Section 1 of H.B. 1674) do not apply. Thus, merely "walk[ing] up to cars on public streets to distribute leaflets" would not violate this statute. *See* Mot. 11.

The challenged provision then provides the penalty for, while rioting, persons who "unlawfully obstruct the normal use of any public street, highway or road." 2021 Okla. Sess. Laws ch. 106, § 1. It then clarifies liability attaches only "by impeding, hindering or restraining motor vehicle traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of motor vehicles or pedestrians traveling thereon." *Id.*

8

And then the provision *further* defines its applicability by specifying "'obstruct' means to render impassable or to render passage unreasonably inconvenient or hazardous." *Id.*

Plaintiff attempts to claim various terms above are unconstitutionally ambiguous because read in isolation, each word could in theory have multiple different meanings or applications. Mot. 11-14. But that is not how we read statutes, or apply the standard for a due process violation. First, Plaintiff argues that the phrase "unreasonably inconvenient" is unconstitutionally ambiguous. But that phrase does not stand alone: liability attaches only when "passage" is "unreasonably inconvenient," by "impeding, hindering or restraining motor vehicle traffic or passage thereon, by standing or approaching motor vehicles thereon, or by endangering the safe movement of motor vehicles or pedestrians traveling thereon." 2021 Okla. Sess. Laws ch. 106, § 1. That is a "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *United States v. Hunter*, 663 F.3d 1136, 1142 (10th Cir. 2011) (citation omitted).

Thus, in *Hunter*, the Tenth Circuit upheld a law prohibiting drivers from "follow[ing] another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." *Id.* at 1141. After all, the concept of reasonableness is present and consistently applied throughout the law. *See id.* at 1142 n.2 (noting with approval *State v. Harton*, 108 S.W.3d 253, 259 (Tenn. Crim. App. 2002) upholding similar law and citing "ten criminal statutes and various cases using the 'reasonable' standard in other contexts"); *see also United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) (citations omitted) (upholding statute that prohibited "unreasonably low prices"); *United States v. Ragen*, 314 U.S. 513, 523 (1942) ("The mere fact that a penal statute is so framed

9

as to require a jury upon occasion to determine a question of reasonableness is not sufficient to make it too vague to afford a practical guide to permissible conduct.").

Thus, the Tenth Circuit held "courts should remain ever mindful that general statements of the law are not inherently incapable of giving fair and clear warning." *Hunter*, 663 F.3d at 1141 (citation and internal marks omitted). The Tenth Circuit also noted that "references in these statutes to considerations such as speed, traffic and road conditions, channel enforcement," *id.* at 1142, but that is equally true here where phrases like "passage," "impeding, hindering or restraining motor vehicle traffic," and "endangering the safe movement of motor vehicles or pedestrians" similarly channel enforcement. Moreover, liability is limited by the fact that the penalty attaches while rioting and courts "presume that a criminal statute derived from the common law carries with it the requirement of a culpable mental state—even if no such limitation appears in the text—unless it is clear that the Legislature intended to impose strict liability." *Bond v. United States*, 572 U.S. 844, 857 (2014).

Similarly, the Eighth Circuit recently rejected a vagueness challenge to a city prohibition on those who "obstruct, impede, interfere, hinder or delay the ***reasonable*** movement of vehicular or pedestrian traffic." *Langford v. City of St. Louis, Missouri*, 3 F.4th 1054, 1059 (8th Cir. 2021), *reh'g denied* (Sept. 15, 2021) (emphasis added). Even though the ordinance challenged there has far *less* specificity than the law challenged here, the Eighth Circuit upheld it because it "uses terms that are 'widely used and well understood,' and a citizen who desires to obey this ordinance should have little difficulty understanding it." *Id.* (quoting *Cameron v. Johnson*, 390 U.S. 611, 616 (1968)).

To be sure, "reasonableness" standards might lead to some hard cases, but "[d]ue process requirements are not designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." *United States v. Welch*, 327 F.3d 1081, 1094 (10th Cir. 2003) (citation and internal marks omitted). After all, "[r]ealistically, most statutes deal with the untold and unforeseen variations on factual situations and the practical necessities of discharging the business of government inevitably limit the specificity with which legislatures can spell out prohibition." *Id.* at 1094 (quoting *United States v. Agnew*, 931 F.2d 1397, 1404 (10th Cir. 1991) (internal marks omitted)).

Plaintiff also claims other terms in the statute are unconstitutionally vague, but those challenges are even weaker. For example, Plaintiff says "render impassible" is vague because it lacks a temporal component. Mot. 12. But a whole host of criminal laws lack temporal components without issue: there is no specified time a burglar needs to spend in a home—or a rioter needs to riot—in order to have violated the law. The lack of a temporal component does not render every such criminal law unconstitutional. Similarly, Plaintiff claims that the isolated word "approaching" is unconstitutionally vague. Mot. 12. But the statute does not penalize every approach to a vehicle, only those approaches that "render impassable or to render passage unreasonably inconvenient or hazardous" a "public street, highway or road within this state" while rioting. Thus, Plaintiff's hypothetical of "a person a block away but walking toward a vehicle" would not fall under this statute. Mot. 12. And to the extent any of these terms are somehow so vague as to be unconstitutional, the law contains a severability

clause, OKLA. STAT. tit. 21, § 1320.8, which would allow the Court to enjoin any vague terms without enjoining or striking the law *in toto*.

In the end, Plaintiff cannot succeed on a pre-enforcement facial challenge to a statute merely "by pointing to hypothetical situations designed to test the limits of" the terms used or by making arguments "that it is difficult to apply those definitions in particular cases." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 22, 24-25 (2010). Plaintiffs "proffer hypertechnical theories as to what the statute covers"—such as a riot-related organizational liability theory for conspiring to have non-riot-related crimes committed—but "while there is little doubt that imagination can conjure up hypothetical cases in which the meaning of these terms will be in nice question, because we are condemned to the use of words, we can never expect mathematical certainty from our language." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972); *Am. Commc'ns. Assn. v. Douds*, 339 U.S. 382, 412 (1950)).

The Supreme Court has held "many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963) (citations omitted).  If situations arise where it is difficult to discern whether a particular act falls within the ambit of the statute, it will be up to later courts to engage in the usual application of statutory construction, including the rule of lenity and the rule that statutes are to be construed to avoid constitutional problems. *E.g.*, *United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963)   (citations omitted). But the injunction Plaintiff seeks against all applications of the challenged laws as facially unconstitutional is unwarranted.

II.     **Plaintiffs are unlikely to succeed on their claim H.B. 1674 facially violates the First Amendment.**

Plaintiff also challenges Sections 1 and 3 of H.B. 1674 under the First Amendment, repackaging its vagueness challenges into claims the statute is facially overbroad in violation of the First Amendment. "A facial challenge to a legislative Act is … the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In *Washington State Grange*, the Supreme Court explained why "[f]acial challenges are disfavored":

> Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.  Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution. We must keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people.

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (cleaned up). Indeed, "[t]he delicate power of pronouncing an Act … unconstitutional is not to be exercised with reference to hypothetical cases thus imagined." *United States v. Raines*, 362 U.S. 17, 22 (1960). "Because facial challenges push the judiciary towards the edge of its traditional purview and expertise, courts must be vigilant in applying a most exacting analysis to such claims." *Ward v. Utah*, 398 F.3d 1239, 1247 (10th Cir. 2005) (*citing Broadrick v. Oklahoma*, 413 U.S. 601, 611-12 (1973)).

Plaintiff attempts to avoid this high standard by claiming that the lower standard that applies to laws that target speech is applicable here. But here, the challenged riot-related provisions are not specifically targeted to expressive activity (*e.g.* picketing or demonstrating), even if one can be speaking *while* engaging in the prohibited conduct. In these circumstances "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003). Someone liable under H.B. 1674 would be punished because of their "nonexpressive *conduct*" (like conspiring to riot or obstructing roadways while rioting), "not [for] his speech" during that conduct. *Id.* at 123. But even if the overbreadth standard applies in this case, a challenged statute is "facially invalid" only "if it prohibits a substantial amount of protected speech," and the Court has "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* at 293 (citations and internal marks omitted).

A.    **Section 3's penalty for conspiring to violation Oklahoma's riot-related laws does not violate the First Amendment.**

"As a threshold matter, we must first consider whether the activity in question constitutes protected speech under the First Amendment." *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019), *cert. denied sub nom. Evans v. Sandy City, Utah*, 141 S. Ct. 235 (2020). "[I]f [the speech] is not [protected], we need go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund., Inc.*, 473 U.S. 788, 797 (1985).

14

Unlike many of the cases Plaintiff relies upon, Oklahoma's riot-related laws do not target expressive activity. That a person is engaging in expression while committing a riot does not shield them from responsibility. Even the cases Plaintiff relies upon acknowledge this reality. "The First Amendment does not protect violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("Certainly violence has no sanctuary in the First Amendment, and [unprotected acts] . . . may not constitutionally masquerade under the guise of 'advocacy.'" (quoting *Samuels v. Mackell*, 401 U.S. 66, 75 (1971) (Douglas, J., concurring)).

This is true not just of rioting, but conspiracy as well. "Many long established criminal proscriptions—such as laws against conspiracy, incitement, and solicitation—criminalize speech … that is intended to induce or commence illegal activities." *United States v. Williams*, 553 U.S. 285, 298 (2008). A law that "punishes the act of conspiracy … does not implicate speech." *United States v. Rowlee*, 899 F.2d 1275, 1278 (2d Cir. 1990). "It rarely has been suggested that the constitutional freedom for speech ... extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *New York v. Ferber*, 458 U.S. 747, 761-62 (1982) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)). In other words, "[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself" as is the case with every criminal conspiracy statute. *United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970).

As explained above, Section 3 of H.B. 1674 is neither vague nor does it impose liability for any conspiracy other than to violate Oklahoma's riot-related laws. In no way does H.B. 1674 attempt to create a "guilt by association" framework, unless that association is a criminal conspiracy (as defined by well-settled law) to violate Oklahoma's riot-related laws. Even under

Plaintiff's (erroneous) interpretation of Section 3, Plaintiff would have to be in a conspiracy to violate some *other* law not challenged in this suit in order to be held liable under Section 3. Either way, it is not mere association that would make Plaintiff liable; it would be active participation in a conspiracy to violate concededly constitutional laws.

For the same reasons, Plaintiff is wrong to repeatedly claim potential liability for third-party demonstrators who "independently and unforeseeably" engage in violence. No accepted definition of "conspiracy" or "conspirator" under American law would create such liability. As Plaintiff acknowledges is perfectly permissible, Oklahoma conspiracy law in fact requires an organization to "itself possess[] unlawful goals" and have "a specific intent to further those illegal aims." *Compare* Mot. 17 (quoting *Claiborne Hardware Co.*, 458 U.S. at 919) *with supra* pp.4-5. Again, under Oklahoma law, "[m]ere presence at or acquiescence in a crime without participation does not equal a crime." *Hackney*, 1994 OK CR 29, 874 P.2d at 814.

Plaintiff's unsubstantiated fears and unreasonable constructions of state law are insufficient to obtain a facial injunction against that law. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972). Thus, a law, like H.B. 1674, "that does not regulate, constrain, or compel any action on their part" is not enough to even confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419 (2013). Rather, whatever "chill" that exists flows not from H.B. 1674 but is "self-inflicted" by Plaintiff's subjective fear. *Id.* at 418. There is no possibility of Section 3, properly applied, to violate the First Amendment, much less in all instances or even to a substantial amount of protected speech relative to the many legitimate unprotected activities in which a conspiracy to riot law can be enforced.

**B.      Section 1's penalty for unlawfully blocking a roadway while rioting does not unconstitutionally infringe on protected speech.**

Plaintiff's challenge to Section 1 under the First Amendment is the most indirect. Plaintiff, an organization, cannot physically obstruct a street; they can only bootstrap a challenge to Section 1 through their potential liability as a co-conspirator with those who seek to obstruct roadways while rioting. In any event, their challenge is unlikely to succeed on the merits.

In *Coates v. Cincinnati*, the Supreme Court held the state may enact laws "to prevent people from blocking sidewalks, obstructing traffic, . . . or engaging in countless other forms of antisocial conduct." 402 U.S. 611, 614 (1971). As explained above, that's precisely what Section 1 of H.B. 1674 does. Plaintiff cannot establish that no set of circumstances exists under which the Section 1 would be valid. To the extent Section 1 can be applied to expressive acts, it is at worst a content-neutral time, place, and manner restriction on speech that, even in public fora, is valid as long as it is "narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." *Rock Against Racism*, 491 U.S. at 798 (1989). This narrow tailoring requirement does not mean a law is invalid "simply because there is some imaginable alternative that might be less burdensome on speech," but instead only requires the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 797, 799 (citations omitted).

The problem addressed by H.B. 1674 is not that some people will find the conduct of Plaintiff's hypothetical co-conspirators "annoying," Mot. 19, it's that their actions—

17

obstructing a public roadway while rioting—even while speaking are "so intrusive that the unwilling audience cannot avoid it." *Hill v. Colorado*, 530 U.S. 703, 716 (2000) (citing *Frisby v. Schultz*, 487 U.S. 474, 487 (1988)). That is, under H.B. 1674, it is not "the content of the speech, as much as the deliberate 'verbal or visual assault,' that justifies proscription." *Id.* (quoting *Erznoznik v. Jacksonville*, 422 U.S. 205, 210-11, n. 6 (1975)). Plaintiff and its co-conspirators have no First Amendment right to obstruct individuals in their vehicles merely because they are speaking when doing so, thus interfering with their state-protected "right to free passage in going to and from work" or other places. *Id.* at 717. Rather, "[i]n going to and from work, men have a right to as free a passage without obstruction as the streets afford" which includes freedom from "unjustifiable annoyance and obstruction" even by those attempting to speak to them. *Id.* (quoting *Am. Steel Foundries v. Tri–City Central Trades Council*, 257 U.S. 184, 204 (1921)). H.B. 1674 does nothing more than vindicate those rights.

Thus, the Tenth Circuit upheld an unwritten policy that banned signs from highway overpasses given "[t]he state has a significant interest in traffic safety" and "there are hundreds of miles of sidewalks and thousands of acres of parks and other public fora to present views and ideas to the public." *Faustin v. City & Cty. of Denver, Colo.*, 423 F.3d 1192 (10th Cir. 2005) (internal marks omitted). The Eighth Circuit similarly rejected a protester's vagueness and First Amendment overbreadth challenge to a St. Louis ordinance that prohibits a person from positioning herself "in such a manner as to obstruct, impede, interfere, hinder or delay the reasonable movement of vehicular or pedestrian traffic," because that ordinance does not "unduly restrict[] free speech in light of the City's legitimate interest in regulating traffic." *Langford*, 3 F.4th at 1059; *see also Singleton v. Darby*, 609 F. App'x 190, 193 (5th Cir. 2015) ("The

First Amendment does not entitle a citizen to obstruct traffic or create hazards for others. A State may therefore enforce its traffic obstruction laws without violating the First Amendment, even when the suspect is blocking traffic as an act of political protest.")

Federal anti-riot laws (18 U.S.C. § 2101) have also been upheld against vagueness and First Amendment challenges since, like here:

> The Court finds no merit in [the challengers'] contention that § 2101 "equates organized assemblies with organized violence" or impermissibly chills expressive conduct by "endorsing the prosecution of political protest." The Act does not criminalize peaceful protest or lawful assembly but rather targets "public disturbance[s] involving" violence or the threat of such violence ... . Moreover, although § 2101 may well permit the prosecution of acts ... committed by riotous assemblages in the midst of an otherwise lawful protest, it does not permit the "prosecution of political protest" not involving such acts.[1]

Like the cases discussed above, Section 1 advances substantial government interests that does not prohibit substantially more speech than is necessary to advance those legitimate interests. It does not target or prohibit "walking toward cars to distribute leaflets or share their messages with drivers," Mot. 19, absent such acts being riotous and obstructing traffic.

In sum, Plaintiff is unlikely to succeed on its facial challenge to Section 1. Its prohibition on obstructing roadways while rioting is not invalid in all possible applications (or in any one can legitimately conceive of), nor would it prohibit a substantial amount of protected speech relative to the myriad instances in which obstructing a roadway while rioting

---

[1] *United States v. Daley*, 378 F. Supp. 3d 539, 554-55 (W.D. Va. 2019), *aff'd sub nom. United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020), *cert. denied*, No. 20-1241, 2021 WL 2405168 (U.S. June 14, 2021), and *cert. denied sub nom. Daley v. United States*, No. 20-7377, 2021 WL 2405169 (U.S. June 14, 2021).

can be constitutionally applied. "We can hardly say, therefore, that there is a 'realistic danger' that [Section 1] will deter [protected speech]." *Williams*, 553 U.S. at 302.[2]

## III.   The balance of equities counsel against injunction.

Plaintiff claims a risk of irreparable harm based on its constitutional claims, Mot. 21-23, but as explained above, those claims are unlikely to succeed. Even if Plaintiff's claims had some merit, there would still be no irreparable harm because the laws it challenges each reference the riot-related laws that have violence as an element, *see* OKLA. STAT. tit. 21, § 1311, and Plaintiff repeatedly disclaims any intent to engage in, organize, or advocate for violence. *E.g.*, Mot. 4, 8, 17. Under the only law Plaintiff challenges where it can be held directly liable—Section 3—there is no requirement forcing Plaintiff to prevent riots or riot-related crimes: they just cannot orchestrate them by being a co-conspirator. Under Section 1, moreover, not only must a person be found guilty of a riot before being subject to the street-obstruction penalties, the obstruction itself must be unlawful. *See* 2021 Okla. Sess. Laws ch. 106, § 1 ("Every person who shall *unlawfully* obstruct . . ."). But as Plaintiff knows, it can *lawfully* obstruct a roadway by obtaining a permit for a demonstration or protest. *E.g.*, OKC Code of Ord. ch. 50, §50-267; Tulsa Rev. Ord. tit 37, ch. 14, § 1403. Under these circumstances, Plaintiff cannot show irreparable harm warranting an injunction.

---

[2] Plaintiff also makes a fleeting argument that Section 1 is unnecessary because of existing riot-related laws and street obstruction laws. Mot. 21 (citing, *inter alia*, OKLA. STAT. tit. 21, § 1754). But the law Plaintiff cites on street obstruction has substantially different elements from Section 1—and a different penalty—and Section 1 is a specified penalty provision for riot, so it validly supplements, rather than being redundant with, existing riot-related laws.

On the other hand, issuing an injunction harms the State and the public. As Plaintiff acknowledges, the third and fourth factor merge when the government opposes an injunction, because the State's interest and the public's interest are one and the same. *See* Mot. 7; *see also Nken v. Holder*, 556 U.S. 418, 435-36 (2009). A facial injunction of Oklahoma's amendments to its riot-related laws threaten public welfare because it would prohibit Oklahoma from enforcing these amendments not just on Plaintiff's activities, but on any person who wishes riotously obstruct traffic or conspire to riot. And "'[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Robert, C.J., in chambers).

## CONCLUSION

For the foregoing reasons the motion for a preliminary injunction should be denied.

Respectfully submitted,

s/ *Andy N. Ferguson*
ANDY N. FERGUSON, OBA NO. 33388
*Assistant Solicitor General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Direct: (405) 521-3921
andy.ferguson@oag.ok.gov
*Counsel for Defendants*

21